## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case 22-81099 |
| Shanin J. Solt, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | Judge Lynch |
| | ) | |
| Rabo Agrifinance LLC f/k/a Rabo Agrifinance, Inc., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 23-96003 |
| | ) | |
| Shanin J. Solt, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Rabo Agrifinance LLC f/k/a Rabo Agrifinance, Inc. commenced this adversary

proceding to ask that Shanin J. Solt be denied a discharge or alternatively for a

determination that debt owed it is nondischargeable.[1]  Now before the court is the

Plaintiff's motion for entry of summary judgment in its favor under sections 727(a)(3)

(Count II) and 727(a)(5) (Count III) of the Bankruptcy Code. (ECF No. 22).  Having

reviewed the Plaintiff's motion and supporting memorandum (ECF No. 23), its

Statement of Uncontested Material Facts submitted pursuant to Local Rule 7056-1

---

[1] Complaint for Determination of Dischargeability of Debtor, or, in the Alternative, Denial of Discharge (ECF No. 1):  Count I under 11 U.S.C. § 727(a)(2); Count II under 11 U.S.C. § 727(a)(3); Count III under 11 U.S.C. § 727(a)(5); Count IV under 11 U.S.C. § 523(a)(2)(A); Count V under 11 U.S.C. § 523(a)(5); and Count VI under § 523(a)(6).

and accompanying exhibits (Pl. Stmt., ECF No. 24), and the Debtor's Response (ECF No. 26) and separate "Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment" (ECF No. 27), together with the Answer to Complaint (Answer, ECF No. 10), the Court will now GRANT the motion.

## I. JURISDICTION

Discharge is a right that is expressly created by title 11 and would have no existence if not created by the Bankruptcy Code. Thus, proceedings on an objection to a debtor's discharge or the dischargeability of a debt arise in a case under title 11. *Kontrick v. Ryan*, 540 U.S. 443, 447-48 (2004). Therefore, this court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J) in which this court has constitutional authority to enter final orders. *See, e.g., In re Yotis*, 521 B.R. 625, 631 (Bankr. N.D. Ill. 2014) (discharge "'stems from the bankruptcy itself,' and may constitutionally be decided by a bankruptcy judge") (citing *Stern v. Marshall*, 564 U.S. 462, 499 (2011)).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), made applicable to this bankruptcy proceeding by Fed. R. Bankr. P. 7056. "Whether a factual dispute is genuine turns on whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Douglas v. Reeves*, 964 F.3d 643, 645-46 (7th Cir. July 7, 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making that determination, the

court must "construe all facts, and draw all reasonable inferences from those facts, in favor of the nonmoving party," and does not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, 727 (7th Cir. 2020).

It is well-settled that the non-moving party may not simply stand behind a general denial of liability or conclusory objection to the movant's offer of proof to avoid summary judgment. After the moving party meets its burden with evidence that would reasonably permit judgment in its favor, it falls upon the party resisting summary judgment to "come forward with evidence that would reasonably permit the Court to find in Debtors' favor on a material issue of fact." *Farm Credit Mid-America, PCA v. Shireman (In re Shireman)*, 2023 Bankr. LEXIS 887, at *3 (Bankr. S.D. Ind. March 31, 2023) (citing *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). "Once the moving party meets its burden, summary judgment is proper if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943, 946 (7th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court's local rules require the party seeking summary judgment to include a statement of uncontested facts with the motion. Bankr. N.D. Ill. R. 7056-1 ("Local Rule"). The movant's submission must include affidavits and other materials required by Fed. R. Civ. P. (c)(1)(A) which are relied on to support each assertion that a fact cannot be or is genuinely disputed. *Id.* 7056-1(A), (B). The respondent must file a concise response to the movant's submission that responds to each disputed

factual statement and a statement of any additional facts that the respondent contends will require denial of the motion. *Id.* 7056-2. In case of any disagreement, the respondent's submission must include "specific references to the affidavits, parts of the record and other supporting materials relied upon" and "any opposing affidavits and other materials referred to in Fed. R. Civ. P. 56(c)(1)(A)." *Id.* 7056-2(A)(2)(b), (A)(3). The rule further provides that all material facts presented in the moving party's statement "will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.* 7056-2(B). The Seventh Circuit has consistently upheld a trial court's "discretion to require strict compliance with Local Rule 56.1," *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015), including by deeming statements admitted where the nonmovant fails to include specific reference to affidavits or other parts of the record that support denial, *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710 (7th Cir. 2015).

Here, the Plaintiff filed the required Local Rule 7056-1 statement containing 34 numbered paragraphs which, it asserts, set out material incontrovertible facts. Each paragraph contains a record citation to the Debtor's pleading, the transcript of the Debtor's Rule 2004 examination and exhibits identified therein (Pl. Stmt. Ex.1),[2] and the sworn affidavit of one of its officers, (Pl. Stmt. Ex. 2). The Debtor does not contest the Plaintiff's affidavit testimony nor contest the admissibility of the exhibits attached to the Plaintiff's statement of facts. Nor does he present a statement of any additional facts. Rather, the Debtor states in his response that he "adopts Plaintiff's

---

[2] The transcript states that at the conclusion of the examination, the Debtor's counsel waived signature. (Ex. 1 at 109.)

Statement of Uncontested Facts as his own and incorporates same herein." (ECF No. 26.)   For purposes of the Plaintiff's motion, therefore, the court will treat all statements of fact contained in the Plaintiff's statement as deemed admitted and will so consider them together with all admissions the Debtor made in his answer to the Adversary Complaint.

### III. UNDISPUTED MATERIAL FACTS

The Plaintiff is a creditor on the basis of two loan facilities which it extended to the Debtor and his businesses in 2014 and 2015.  In 2014 and later amended in 2015, the Plaintiff lent the Debtor's business, SJS Feedlots, LLC ("SJS"), $2,500,000 guaranteed by the Debtor and secured by certain property of SJS and the Debtor.  In 2015, the Plaintiff lent the Debtor and non-debtor Jennifer Solt $250,000 secured by the same and additional collateral.

The Plaintiff's collateral included livestock and identified pieces of equipment. The Debtor agreed, among other things, to properly "maintain and care for the [c]ollateral; keep complete, current and accurate records with respect to the [c]ollateral, . . . and not to sell or otherwise dispose of any [c]ollateral." (Pl. Stmt. ¶ 11 (citing Answer ¶ 10).)  The Debtor and SJS failed to make timely payments on the loans. On or about March 19, 2019, the Plaintiff notified the Debtor of the default and accelerated the loans.  It commenced a suit against the Debtor on July 19, 2019, and obtained a default judgment against him on December 3, 2019.

Between 2012 and 2018, the Debtor operated SJS at three locations in Illinois, purchasing cattle, feeding and fattening them, and then selling the cattle to third parties.  At its peak, the Debtor fed between 1,500 and 2,000 head of cattle at any

given time, each of which served as collateral for the Plaintiff's loans. In March 2018, the Debtor representated to the Plaintiff that he was selling his cattle to either Tyson Foods, Inc. or JBS Packerland, Inc. However, he instead sold significant head of cattle through an auction house called NFO Members Livestock Inc. ("NFO") without informing the Plaintiff. The Debtor received from NFO: $175,000 on July 25, 2018; $31,256.63 on August 6, 2018; $44,464.73 on August 7, 2018; $50,000.00 on September 18, 2018; $26,602.37 on October 1, 2018; $100,000.00 on October 2, 2018; and $65,000.00 on October 4, 2018. The collateral was disposed of without the Plaintiff's consent, which occurred without notice to the Plaintiff. It also is not disputed that the Debtor failed to keep complete, current and accurate records of the collateral and related proceeds despite his contractual obligations. The Debtor made his last payment to the Plaintiff on June 8, 2018.

After issuing its notice of default and demand for payment, the Plaintiff brought suit against the Debtor and others in the Fifteenth Judicial Circuit Court (Stephenson County, Illinois) for breach of guaranty and other relief. On December 3, 2019, the Illinois court, having found the defendants in default, granted default judgment and entered a monetary judgment against the Debtor and other defendants in favor of the Plaintiff.

In 2020 or 2021, the Debtor threw away his work computer without creating backup files, and shredded and disposed of copies of the contracts with entities through which he sold cattle. He testified during his Rule 2004 examination that he "got rid of everything" related to sales records of the cattle. (Pl. Stmt. ¶ 32.) The Debtor admits, for purposes of this motion, that before initiating this bankruptcy case

he sat for examination in state court supplementary proceedings where he provided false and misleading information concerning the disposition of the cattle and other collateral. (Answer ¶ 24.) The Debtor has failed to satisfy the default judgment. Nor has he turned over the collateral to the Plaintiff.

The Debtor filed his chapter 7 petition for relief on October 13, 2022. He did not list the equipment he pledged as collateral for the 2015 loan in his bankruptcy schedules. The Debtor offered no clear explanation about what happened to the collateral when questioned during his Rule 2004 examination, stating that he had "no idea where the equipment is" and "did not" investigate the location of the equipment after it supposedly went missing. Instead, he "just assumed that [the Bank] came and got it." (Pl. Stmt. ¶ 33.) He generally testified that upon receiving cattle proceeds he would "pay Rabo, pay feed bills, pay electrics bills, make payments for the machine. Whatever business expenses needed to be taken care of." (*Id.* ¶ 25.) The Debtor was similarly evasive when questioned specifically about the proceeds he received in 2018 after his last payment to the Plaintiff, responding that he used the July 25th payment to "[write] a check to Eastland Feeds for feeding the cattle" and kept an additional $25,000 "for minor business expenses." (*Id.* ¶ 27.) Although claiming to have used the August 6th funds for "business expenses," he stated that he "wouldn't have a clue" what expenses were paid with the funds. (*Id.*) The Debtor further stated that he did not recall what he did with the August 7th, September 18th or October 1st proceeds. (*Id.*) With respect to the $100,000 received on October 2nd, he claimed that he bought out two unspecified partners' business interests in SJS and "gave them a little extra money" for "being members and sticking with me." (*Id.* ¶ 28.)

He stated that with the $65,000 he received on October 4th, he gave his "business partners" a "bonus," with each getting a "hundred grand" for "just being good to me." (*Id.* ¶ 30.) The Debtor acknowledged that the bonus was at least $40,000 more than any capital contribution by either business partner. (*Id.*)

## IV. DISCUSSION

A. Summary Judgment Under 11 U.S.C. § 727(a)(3).

Count II of the Adversary Complaint objects to discharge on the basis of section 727(a)(3) of the Bankruptcy Code. That provision grants the court broad power to decline to grant a discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

"The purpose of §727(a)(3)," the Seventh Circuit has noted, "is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 969 (7th Cir. 1999). Intent to defraud is not a necessary element for relief. *Id.* Section 727(a)(3) requires "as a precondition to discharge that debtors produce records which provide creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996). Neither "the court nor a creditor is required to reconstruct a debtor's financial situation by sifting

through a morass of checks and bank statements." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002).

The plaintiff has the initial burden of establishing the inadequacy of the Debtor's records. *PNC Bank, N.A. v. Leongas (In re Leongas)*, 628 B.R. 71, 104 (Bankr. N.D. Ill. 2021). The determination is within the court's discretion, and factors include "the size, complexity, and nature of the Debtor's business; the Debtor's education and sophistication; his business experience; and his 'personal financial structure.'" *Id.* (quoting *Schechter v. Hansen (In re Hansen)*, 325 B.R. 746, 762 (Bankr. N.D. Ill. 2005)). Generally, the records should be sufficient to "permit the court and creditors to trace the debtor's financial dealings." *Id.* (quoting *Neugebauer v. Senese (In re Senese)*, 245 B.R. 565, 576 (Bankr. N.D. Ill. 2000)). Once the Plaintiff demonstrates the inadequacy of records, "the burden shifts to the Debtor to show that his failure to preserve or produce records was justified under all of the circumstances of the case." *Leongas*, 628 B.R. at 104.

In its pending motion, the Plaintiff argues that the Debtor should be denied discharge not only for his admitted failure to keep or preserve records of the transactions related to the disposition of the collateral livestock, but also for his admitted trashing of records and destruction of a device which contained business records. It is not controverted that, despite requests for production of documents in connection with the Rule 2004 exam — or with the earlier, pre-petition state court supplementary proceedings — the Debtor failed to produce records necessary to determine the Debtor's financial condition or business transactions and the details of the disposition of collateral and its proceeds. He admits, instead, to destroying in

2021 or 2022 — after he received demand letters from the Plaintiff's attorney — sales records, copies of contracts and his business computer from which his business transactions might be ascertained. Asked what happened to his documents and records, the Debtor testified that while the state court litigation was pending, he "got rid of everything" in 2020 or 2021 and "shred them and threw them in the garbage." (Pl. Stmt. ¶ 32.) He also admitted that he "threw . . . away" his work computer and failed to create backup files for it. (*Id.*) As for the missing equipment collateral, he admitted under oath that he assumed it was taken by another creditor but has "no idea" where it is, failing to investigate what happened to it after it went missing. (*Id.* ¶ 33.) The Debtor has offered no factual justification for the failure to maintain and destruction of those records.

In his unsworn memorandum in opposition to the pending motion, the Debtor's attorney raises certain allegations about the history of the records and the condition of the computer at the time of its disposal. Vaguely insisting that "some records were produced. Others were not," his brief attempts to lay blame on the Debtor's business ceasing operations, "the computer becoming inoperative," his divorce, and a previous foreclosure on real property. (ECF No. 27 at 2.) But the Debtor offers no affidavit or other evidence for these claims. The court, therefore, must find that the Debtor has not furnished a reasonable explanation for his failure to preserve these records. He does not dispute that recorded information sought by the Plaintiff had existed and admits that the burden to maintain those records was his. But he does not indicate that he attempted to recover any of it. (*See id.*)

The Debtor instead attempts to deflect attention from his admitted failure to preserve this written (including electronically recorded) information by arguing that this is a case of one who "failed to maintain good records" for which whether his deficiency is justified remains to be decided. *Id.* He concludes by arguing, without adducing any proof, that his failure to maintain and preserve — and his destruction of — recorded information from which his financial condition or business transactions (including the admitted transactions concerning the livestock) might be ascertained, is an issue that cannot be decided by summary judgment. (*Id.* at 3.) But in doing so, he acknowledges:

> As a precondition to discharge under 727(a)(3) a debtor must produce enough information for creditors to determine and track the debtor's financial and business transactions for a reasonable time prior to the bankruptcy. *In re Jackson*, 453 B.R. 789, 796 (Bankr. E.D. Pa. 2011) (citing *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996)).

(*Id.*)

This, the Debtor has admitted, he has not done. For purposes of summary judgment, "the opposing party must highlight any disputes with the moving party's statement by making specific reference to affidavits or other supporting materials." *Banks v. Fuentes*, 545 F. App'x 518, 520 (7th Cir. 2013). "A party seeking or opposing summary judgment must support his factual assertions about disputed facts with citations to 'particular parts of the materials in the record,' and the court need consider only the cited materials (though it may consider other materials in the

record." *McKinney v. Office of the Sheriff,* 866 F.3d 803, 808 (7th Cir. 2017).[3]  As

discussed above, the Local Rules require an opposing party's statement of additional

facts to be in the form of "a statement, consisting of short, numbered paragraphs, of

any additional facts that require the denial of summary judgment, including

references to the affidavits, parts of the record, and other supporting materials relied

upon." Local Rule 7056-2(A)(2)(b).  The response memorandum in which the Debtor's

attorney makes the claims about the Debtor's records and computer is not labeled as

a statement of additional facts, does not consist of short, numbered paragraphs and

does not include proper references to affidavits, parts of the record or other supporting

materials relied upon.  Nor does the Debtor offer any supporting materials for it.

Accordingly, such factual allegations as might be inferred from the Debtor's argument

must be disregarded for purposes of summary judgment.

The Plaintiff has demonstrated that there is no genuine dispute of material

fact as to the inadequacy of the Debtor's records from which the Debtor's financial

condition or business transactions might be ascertained.  The Debtor adopts the

Plaintiff's statement of facts which lays out, among other things, the fact that the

Debtor conducted multiple large-scale transactions involving the disposition of scores

of head of livestock.  He admits to his failure to preserve — and on occasion to the

destruction of — business records, even as litigation proceeded in the state court

concerning his business-related debts and dealings.  While the court will observe that

---

[3] In *McKinney,* the Seventh Circuit ultimately concluded that the opponent had sufficiently complied
with local Northern District of Indiana rules and found it an abuse of discretion for the district court
to have disregarded evidence cited by the opponent. In contrast, here, the Debtor neither attaches nor
cites admissible evidence supporting the factual allegations made in his memorandum.

the record does not reveal the Debtor to be "sophisticated in business," its analysis cannot end with that and cannot disregard, as the Debtor would have it, the Debtor's failure to show that his failure to preserve or produce his records is justified under all the circumstances of the case. Accordingly, summary judgment will be entered in favor of the Plaintiff on Count II.

B. Summary Judgment Under 11 U.S.C. § 727(a)(5).

The Plaintiff also seeks summary judgment on its third count brought under section 727(a)(5). That provision provides an exception to discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). This section "gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss or disappearance of assets." *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996) (quoting *In re Martin*, 698 F.2d 883, 886 (7th Cir. 1983)). The creditor objecting to discharge "has the initial burden to establish that there has been a loss or disappearance of assets; then the burden shifts to the debtor to satisfactorily explain the loss of assets." *Hudgens v. New Equip. Leasing Inc. (In re Hudgens)*, 149 F. App'x 480, 488 (7th Cir. 2005) (citing *In re Martin*, 698 F.2d at 886). "What constitutes a satisfactory explanation . . . is left to the discretion of the court." *Structured Asset Servs., L.L.C. v. Self (In re Self)*, 325 B.R. 224, 250 (Bankr. N.D. Ill. 2005). Like section 727(a)(3), intent to defraud need not be shown for section 727(a)(5). *In re Suttles*, 819 F.2d 764, 766 (7th Cir. 1987).

For purposes of Section 727(a)(5), the debtor's satisfactory explanation "must consist of more than . . . vague, indefinite, and uncorroborated assertions by the debtor." *D'Agnese*, 86 F.3d at 734. The "explanation must be good enough to eliminate the need for the Court to speculate as to what happened to all the assets." *Id.* (quoting *Martin*, 145 B.R. at 950).

> [It] must demonstrate the debtor has exhibited good faith in conducting his affairs and explaining the loss of assets. . . . [I]t must meet two criteria in order to be deemed satisfactory. First, it must be supported by at least some documentation. Second, this documentation must be sufficient to eliminate the need for the court to speculate as to what happened to all the assets.

*In re Self*, 325 B.R. 250-51 (citations omitted). In reaching its determination, the court will examine the debtor's explanation for its "completeness and truth." *Cohen v. Olbur (In re Olbur)*, 313 B.R. 732, 741 (Bankr. N.D. Ill. 2004).

Here the Plaintiff's uncontested statement of undisputed facts — which the Debtor, in his own words, "adopts . . . as his own and incorporates" (ECF No. 26) — satisfies the first stage of proof for section 727(a)(5). There is no genuine issue that the loans to the Debtor's business which he guaranteed and the further loans to the Debtor were secured by collateral that included hundreds of head of cattle and certain identified equipment.

These loans are in default, the Plaintiff's demands remain unsatisfied, and the state court has issued (pre-petition) default judgment against the Debtor. In the security agreements for the loans, the Debtor agreed to preserve, maintain and care for the collateral, keep complete and accurate records with respect to it, and not to sell or dispose of any of it. It is also undisputed that the Debtor received almost

$500,000 in seven transactions in late 2018 from the disposition of Plaintiff's livestock collateral. He did not account for these assets in his bankruptcy schedules and offered only a limited account for them during his Rule 2004 examination. As to the collateral equipment, the Debtor testified that he had not seen it since a foreclosure on certain real property and that he is not aware of its location. The Debtor admitted for purposes of this motion that he failed to timely notify the Plaintiff of the disposition of the livestock and that he destroyed recorded material about his business transactions, including sales records related to the livestock.

In response, the Debtor has offered only vague, incomplete and uncorroborated assertions about the proceeds from the disposition of the missing collateral. Indeed, the Debtor acknowledged that he destroyed records of those transactions while litigation against him by the Plaintiff was pending and that some of the proceeds may have been given to insiders of the Debtor for no consideration. Despite the opportunity to present his factual explanation, the Debtor's response adopted the Plaintiff's statement of material facts in whole and offered no additional facts.

The Seventh Circuit has stated on many occasions that summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). The time to "put up" has arrived, but the Debtor offers no cognizable defense to the section 727(a)(5) count. Instead, he argued that the "sufficiency of the Defendant's responses to the whereabouts of the Plaintiff's collateral is a question of fact" and that the "extent the Plaintiff is satisfied or not is

a question that must be decided by a trier of fact and should not be decided by summary judgment." (ECF No. 27 at 3.) But there is no dispute that a loss or disappearance of assets to meet the Debtor's liabilities occurred with the disposition of hundreds of thousands of dollars in proceeds from sales of cattle in 2018 and the disappearance of the collateral equipment. (*See* Answer ¶ 11.)

The Plaintiff's undisputed evidence of the loss or disappearance of collateral assets shifts the burden to the Debtor to provide a satisfactory explanation for that loss. He has not. The uncontroverted record which the Debtor adopts, instead reveals his vague, evasive, incomplete and insufficient responses to the questions put to him regarding the disposition of the collateral. Indeed, as to the August 7th, September 18th and October 1st payments, totaling $121,067.10, the Debtor presents no explanation whatsoever, merely stating that he did not recall what he did with the funds. This failure to offer any explanation for the disposition of more than $100,000 received after the Debtor defaulted on his obligations to the Plaintiff, within four years before he filed for bankruptcy, alone provides sufficient grounds to deny the Debtor a discharge under section 727(a)(5). *See, e.g., Hazelrigg v. United States Tr. (In re Hazelrigg)*, No. WW-13-1230-TaDJu, 2013 Bankr. LEXIS 4962, at *20 (B.A.P. 9th Cir. Nov. 19, 2013) (affirming bankruptcy court's entry of summary judgment in plaintiff's favor on section 727(a)(5) count where debtor "failed to proffer admissible evidence explaining the disposition of the missing Assets"). But further, there is his failure to offer a complete, substantiated, and factual explanation regarding his spending proceeds on unspecified or overbroad "expenses" or transfers to unidentified "partners," and his vague and evasive claims that a bank "came and got" his

equipment, all of which only leave this court with mere speculation and without a reasonable explanation for the missing collateral.

There is no genuine issue that the Debtor has failed to meet his burden to present a reasonable explanation for the admitted loss of the collateral assets. Accordingly, summary judgment will be entered in favor of the Plaintiff on Count III.

## V.  CONCLUSION

For all the reasons stated above, Plaintiffs' motion for summary judgment is granted.  Summary judgment will be granted in favor of the Plaintiff on both Counts II and III of the Adversary Complaint, denying the Debtor a discharge pursuant to 11 U.S.C. §§ 727(a)(3) and (5).

A separate order and judgment will be issued concurrent with this Memorandum Opinion giving effect to the determinations reached herein.

DATE: December 20, 2023

ENTER

Thomas M. Lynch
United States Bankruptcy Judge